# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-IA-00814-SCT

*ILLINOIS CENTRAL RAILROAD COMPANY*

*v.*

*DEBORAH JACKSON, SURVIVING SPOUSE AND PERSONAL REPRESENTATIVE OF CHARLES D. JACKSON, JR., DECEASED*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/22/2014 |
| TRIAL JUDGE: | HON. RICHARD W. MCKENZIE |
| TRIAL COURT ATTORNEYS: | TANYA D. ELLIS |
| | WAYNE DOWDY |
| COURT FROM WHICH APPEALED: | PIKE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | THOMAS BENTON YORK |
| | TANYA D. ELLIS |
| ATTORNEYS FOR APPELLEE: | WAYNE DOWDY |
| | DUNBAR DOWDY WATT |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | REVERSED AND RENDERED - 12/10/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DICKINSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Deborah Jackson sued Illinois Central Railroad Company ("Illinois Central") under the Federal Employers' Liability Act (FELA) for the wrongful death of her husband, Charles Jackson. Jackson alleged that her husband's death from lung cancer was caused by his exposure to asbestos while working for the railroad. After the close of discovery, Illinois Central filed a motion for summary judgment and a motion to strike Jackson's expert, Michael J. Ellenbecker. Later, Illinois Central moved to strike improper evidence from

Jackson's response to the motion for summary judgment. When Jackson attempted to supplement Ellenbecker's designation at the summary-judgment hearing, Illinois Central moved *ore tenus* to strike the supplementation.

¶2.     The Circuit Court of Pike County denied all of Illinois Central's motions. This Court granted Illinois Central's petition for an interlocutory appeal. We find that Jackson's expert designation of Ellenbecker was improper summary-judgment evidence because it was not sworn to upon personal knowledge and constituted inadmissible hearsay. Because the supplemental response was unsworn and never was filed, it also was improper summary-judgment evidence. And, because Jackson cannot show a genuine issue of material fact without Ellenbecker's testimony, we reverse the denial of summary judgment and render judgment in favor of Illinois Central.

**FACTS**

¶3.     Jackson filed the complaint on August 15, 2012. She alleged that Charles worked for Illinois Central from 1974 until 1982, and his primary duties were as a carman at the railroad's car shops in McComb. She alleged that Charles developed lung cancer and died as the result of having been exposed to asbestos at Illinois Central.[1]

¶4.     On September 14, 2012, Illinois Central served Jackson's counsel with its first set of interrogatories and requests for production of documents. Illinois Central requested disclosure of the experts Jackson expected to call and the substance of each expert's opinions. In her answer to interrogatories on January 30, 2013, Jackson named Dr. Barry

---

[1] According to Jackson's interrogatory answers, Charles was diagnosed with lung cancer on August 21, 2009, and he died on October 29, 2010.

Whites as a potential expert and stated that the answer would be supplemented. A scheduling order dated July 22, 2013, directed that discovery be completed by January 31, 2014, and set July 21, 2014, as the trial date. On August 30, 2013, Jackson designated Ellenbecker as an expert and provided a summary of his testimony. In the designation, Jackson provided a description of Ellenbecker's general testimony about railroad employees' exposure to asbestos as the result of employer negligence. Copied into the designation was a report by Ellenbecker stating that the report was general information and did not apply to a particular worker. Jackson's counsel signed the designation of Ellenbecker. On September 6, 2013, Jackson filed the designation of Dr. Whites, also signed by Jackson's counsel. This designation stated that Dr. Whites would testify about how asbestos contributes to lung disease.

¶5.     Illinois Central moved to strike Ellenbecker's designation on March 18, 2014. Illinois Central argued that Ellenbecker's testimony should be excluded because Jackson had failed to disclose the substance of Ellenbecker's opinions, to produce any report specific to Charles, or to make Ellenbecker available for deposition. Illinois Central complained that Ellenbecker's designation was incomplete because the designation contained Ellenbecker's statement that his report was not meant to address the specific exposures of any particular railroad worker. Illinois Central argued that, because Jackson had failed to seasonably supplement the incomplete designation, Ellenbecker's testimony must be excluded.

¶6.     On the same day, Illinois Central moved for summary judgment on the ground that Jackson could present no evidence that Charles had been exposed to asbestos while employed

by Illinois Central. Jackson filed a response to the motion for summary judgment with attached excerpts of the deposition of Dr. Whites, deposition excerpts of two former Illinois Central employees who had worked with Charles, and the designation of Ellenbecker. Illinois Central filed a reply on May 12, 2014, arguing that summary judgment should be granted because the Ellenbecker designation and a report by Dr. Whites were unsworn, factually unsupported hearsay. Illinois Central also argued that Jackson had no proof of exposure because Charles's co-workers had admitted in their depositions that they did not know if Charles had been exposed to asbestos at work. The same day, Illinois Central moved to strike the Ellenbecker designation and Dr. Whites's report from Jackson's summary judgment response,[2] arguing that both pieces of evidence were unsworn, not based upon personal knowledge, and constituted inadmissible hearsay.

¶7.    The trial court heard arguments on the motions filed by Illinois Central on May 20, 2014. Illinois Central repeated its arguments that Ellenbecker's expert designation should be struck because it had not been seasonably supplemented with information specific to Charles. Illinois Central also argued that Dr. Whites's report and the Ellenbecker designation were improper summary-judgment evidence and should be struck from the summary-judgment record.

---

[2] The "Dr. Whites report" is a letter from Dr. Whites to Jackson's counsel opining that "there is a direct link of asbestos exposure to [Charles's] development of lung cancer." Illinois Central attached Dr. Whites's report to its motion for summary judgment. But Jackson did not attach Dr. Whites's report to its response to the motion for summary judgment. Thus, Illinois Central's motion actually asked the trial court to strike evidence from the summary-judgment briefing that Illinois Central, not Jackson, submitted.

4

¶8.     In response, Jackson's counsel averred that Illinois Central had been provided with a supplemental response to Ellenbecker's designation on May 2, 2014. However, this supplemental response never was filed. Jackson's counsel then read from and described the supplemental response:

> [Ellenbecker] visited the McComb I.C. car shops in 1995, and on one other occasion. He knows about asbestos abatement efforts by Illinois Central that were conducted in years after the shops were closed. When he was in the McComb shops, he says, as he said in numerous other cases where they were defending the Railroad, he observed evidence of recent abatement. He inspected the car shop where [Charles] worked, and where these other four men who were deposed in January worked. He observed brake shoes. And he has already given testimony many times, and at other times, that the application of brakes to the railroad cars caused exposure to asbestos. He observed equipment with frayed insulation on pipe. And he will testify at this trial and as is set forth in this interrogatory response . . . that while he was down in the McComb shop he observed frayed insulation on pipe with asbestos-containing insulation used as pipe wrap. He has testified, and here, very damaged, deteriorated conditions of asbestos wrapping around the pipes. He has photographed the shops in the McComb facility. He observed the box cars that were sealed inside the shop. He observed and photographed bags labeled asbestos disposal bags.
>
> . . .
>
> He is aware of the participation of Illinois Central officers and agents in meetings where they discussed industrial hygiene and, particularly, asbestos and asbestos exposure. He has testified, and we know he's going to testify in this case, as we state, that these documents indicate significant knowledge by Illinois Central about use of asbestos going all the way back to the 1930s . . . . he says it's poor industrial hygiene practice for all workers not to be informed about the hazards of asbestos exposure. He is familiar with the documents that communicated to superintendents of the various Illinois Central shops the concerns about asbestos exposure. But their – testimony of the four gentlemen who were deposed in January indicates that there were no signs, none of them ever knew anything about asbestos exposure until the asbestos abatement programs were done in the 1990s, well after the McComb shops were closed and well after the time when these men left the employment of Illinois Central.

Jackson's counsel also read Ellenbecker's opinions about the warnings and remedial measures that Illinois Central should have taken to protect Charles from asbestos-caused harm. He stated that Ellenbecker would testify that Jackson had been exposed to unreasonably high levels of asbestos while working for Illinois Central.

¶9. Jackson's counsel argued that the coworkers' testimony, Dr. Whites's testimony, and the supplemental response of Ellenbecker created genuine issues of material fact that Charles's death was caused by asbestos exposure at the McComb shops. Illinois Central responded that the supplemental response was provided three months after discovery closed. Illinois Central orally moved to strike the supplemental response because it was untimely, without explanation, and without leave of court. Counsel for Illinois Central also moved to strike the supplemental response from the record because it was not competent summary-judgment evidence in that it was "not a sworn statement from Ellenbecker," and it was simply "hearsay, prepared and written by an attorney."

¶10. On May 22, 2014, the trial court denied Illinois Central's motion for summary judgment and the motion to strike improper summary-judgment evidence. On June 2, 2014, the trial court denied Illinois Central's motion to exclude Ellenbecker as Jackson's expert witness.

**DISCUSSION**

I. **DID THE TRIAL COURT ABUSE ITS DISCRETION BY DENYING THE MOTION TO STRIKE IMPROPER SUMMARY-JUDGMENT EVIDENCE?**

6

¶11.    Illinois Central filed a motion to strike Ellenbecker's designation and Dr. Whites's report from Jackson's summary-judgment briefing. Illinois Central argued that the unsworn expert designation and report constituted hearsay and were not proper summary-judgment evidence. The trial court denied the motion to strike. Illinois Central renews its arguments on appeal.

¶12.    Under our rules of civil procedure, a party against whom a claim is asserted may "move with or without supporting affidavits for a summary judgment in his favor." M.R.C.P. 56(b). The trial court shall grant the motion "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). Other than undenied allegations in the party's pleadings and Rule 36 admissions, all material submitted in opposition to summary judgment must be sworn. *Magee v. Transcontinental Gas Pipe Corp.*, 551 So. 2d 182, 186 (Miss. 1989). This includes, but is not limited to, depositions, answers to interrogatories, and affidavits. *Id.* These materials must be sworn, made upon personal knowledge, and show that the party giving them is competent to testify. *Id.*; *see* M.R.C.P. 56(e).

¶13.    Jackson's designation of Ellenbecker set out Ellenbecker's opinions about asbestos in the railroad industry. But it was sworn to and signed by Jackson, not Ellenbecker. Therefore, as Illinois Central argues, the designation was unsworn and not based upon Ellenbecker's personal knowledge. And when a party files her own sworn statement of what an expert witness will say, offered for its truth, the statement is hearsay and is incompetent

7

to support or oppose summary judgment. *Walker v. Skiwski*, 529 So. 2d 184, 187 (Miss. 1988); M.R.E. 801(c). In *Walker*, a parent who alleged that a physician had botched his son's circumcision filed his own sworn interrogatory answers listing five physicians who would testify to Dr. Skiwski's negligence. *Id.* Walker provided no sworn testimony by any of the five physicians. *Id.* This Court held that Walker's interrogatory answer stating what the physicians would say, sworn to by Walker himself, constituted pure hearsay and was incompetent summary-judgment evidence. *Id.*

¶14.     The basis of the rule in *Walker* is that summary-judgment evidence must be admissible at trial. *Trustmark Nat'l Bank v. Meador*, 81 So. 3d 1112, 1118 (Miss. 2012). To be exact, the content of summary-judgment evidence must be admissible at trial although the evidence may be in a form, such as an affidavit, that would not be admissible. Jeffrey Jackson, *Mississippi Civil Procedure* §11:22 (2009). Thus, hearsay statements that would not be admissible at trial are incompetent to support or oppose summary judgment. *Harris ex rel. Harris v. Pontotoc Cty. Sch. Dist.*, 635 F.3d 685, 692 (5th Cir. 2011). Here, Jackson swore that Ellenbecker would offer various opinions at trial about asbestos in the railroad industry. These opinions constituted inadmissible hearsay because they were offered for their truth and meet no hearsay exception. M.R.E. 801(c); M.R.E. 803. Therefore, Ellenbecker's opinions in the designation were incompetent to oppose summary judgment, and the trial court erred by denying the motion to strike.

¶15.     Illinois Central also argues that Dr. Whites's report should have been struck from the summary-judgment briefing because it, too, was unsworn. As previously noted, "Dr.

8

Whites's report" was a letter from Dr. Whites to Jackson's counsel opining that "there is a direct link of asbestos exposure to [Charles's] development of lung cancer." Illinois Central introduced Dr. Whites's report into the summary-judgment briefing by including it in its motion for summary judgment. Jackson did not include the report in her response opposing summary judgment. Instead, Jackson relied upon Dr. Whites's sworn deposition testimony. By arguing that Dr. Whites's report should be struck from the summary-judgment briefing, Illinois Central asks this Court to strike evidence that Illinois Central, not Jackson, submitted. "An appellant cannot complain on appeal of alleged errors which he invited or induced." *HWCC-Tunica, Inc. v. Jenkins*, 907 So. 2d 941, 942 (Miss. 2005) (quoting *Busick v. St. John*, 856 So. 2d 304, 315 (Miss. 2003)). This issue is without merit.

## II. DID THE TRIAL COURT ERR BY DENYING ILLINOIS CENTRAL'S MOTION FOR SUMMARY JUDGMENT?

¶16. This Court applies de novo review to the grant or denial of a motion for summary judgment. *Serv. Cos. Inc. v. Estate of Mautrice Vaughn*, 169 So. 3d 875, 878 (Miss. 2015). A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Hosemann v. Harris*, 163 So. 3d 263, 267 (Miss. 2015). We consider the evidence in the light most favorable to the nonmoving party. *Id.*

¶17. Federal standards govern the determination of whether a FELA case survives a motion for summary judgment. *Illinois Cent. R. Co. v. Brent*, 133 So. 3d 760, 767-68 (Miss. 2013).

FELA imposes a duty upon a railroad to provide a reasonably safe workplace. *Peyton v. St. Louis Sw. R. Co.*, 962 F.2d 832, 833 (8th Cir. 1992). The statute provides, in pertinent part:

> Every common carrier by railroad while engaging in commerce . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51 (2012). A plaintiff proceeding under FELA must prove the traditional common-law elements of negligence, including duty, breach, causation, and foreseeability. *Brent*, 133 So. 3d at 775 (citing *Robert v. Consol. Rail Corp.*, 832 F.2d 3, 6 (1st Cir. 1987)). And "[t]he quantum of evidence required to establish liability in a FELA case is much less than in an ordinary negligence action." *Brent*, 133 So. 3d at 768 (quoting *Harbin v. Burlington N. R. Co.*, 921 F.2d 129, 131 (7th Cir. 1990)). This relaxed burden of proof in FELA cases protects the plaintiff's right to a jury trial, and summary judgment is appropriate only upon a "complete absence of probative facts" supporting the plaintiff's claim. *Brent*, 133 So. 3d at 768 (citing *Rivera v. Union Pac. R. Co.*, 378 F. 3d 502, 503 (5th Cir. 2004)). But the plaintiff must present "more than a mere 'scintilla of evidence" to prevail. *Brent*, 133 So. 3d at 768.

¶18. Jackson alleged that Illinois Central breached its duty to provide Charles with a reasonably safe workplace by exposing him to asbestos, causing his eventual development of lung cancer. Illinois Central argues that, even under the liberal FELA burden of proof, the summary-judgment evidence was insufficient to create a genuine issue of material fact that

10

Charles was exposed to asbestos at the McComb shops. Most of the evidence of exposure in this case came from the expert designation and supplemental response of Ellenbecker. But this Court has found that Ellenbecker's unsworn opinions in the expert designation cannot be considered because they constituted inadmissible hearsay. Jackson served a supplemental response containing Ellenbecker's unsworn opinions that Charles had been exposed to asbestos at the McComb shops. Not only was this supplemental response also unsworn, inadmissible hearsay, but it was never filed in the record, rendering it incompetent for consideration on summary judgment. This Court has held that Rule 56(c) requires materials considered on summary judgment to be "on file." ***Lawrence v. Lawrence***, 956 So. 2d 251, 257 (Miss. 2006). "Rule 56(c) requires that all matters upon which a party or the court may rely must be filed with the clerk and served on the other party prior to the hearing." ***Id.*** "It is certainly contrary to Rule 56(c) for the [trial court] to consider documents that are not on file prior to the hearing on the motion." ***Id.*** Therefore, the supplemental response could not be considered in opposition to summary judgment.

¶19.   The remaining evidence included Dr. Whites's opinion that Charles's lung cancer was caused by his exposure to asbestos and the depositions of Charles's coworkers about the conditions at the McComb shops. Because Dr. Whites admitted in his deposition that his knowledge of Charles's asbestos exposure was based entirely on what he was told by Charles's attorneys, Dr. Whites's testimony does not create a genuine issue as to whether Charles was exposed to asbestos at the McComb shops. In their depositions, three of Charles's coworkers described dusty conditions at the McComb shops, and two disclaimed

11

any knowledge of asbestos at the site. Kenneth Ray Jennings stated that he had no personal knowledge of asbestos exposure while working for Illinois Central. Douglas Reese said he had never heard the term "asbestos" while working for the railroad. Isaac Shaw stated that he "was told" that brown putty used to seal holes in plywood contained asbestos. Specifically, he testified that "they said it was supposed to have been had asbestos in it . . . Now, I don't know if it had asbestos in it, but I was told it had asbestos in it. But me knowing, I don't know." He did not identify who had told him the putty contained asbestos and did not know the name of the putty product.

¶20.  Shaw's testimony was insufficient to create a genuine issue as to Charles's asbestos exposure because he had no personal knowledge that the putty used at the McComb shops contained asbestos. Under Mississippi Rule of Evidence 602, "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter." M.R.E. 602. The witness's own testimony may be sufficient to prove personal knowledge. M.R.E. 602. But Shaw's testimony falls woefully short of this standard. Shaw testified that he was "told" that the putty contained asbestos, and he admitted he did not know if it contained asbestos. Shaw's testimony demonstrates that he had no personal knowledge of whether the putty contained asbestos. *See Goldman v. Johns-Manville Sales Corp.*, 514 N.E.2d 691, 695 (1987) (the court held that a bakery worker who was told that insulating board and pipe insulation contained asbestos lacked personal knowledge of the presence of asbestos).

¶21. Viewing the evidence in the light most favorable to Jackson, the evidence did not create a genuine issue of material fact that Illinois Central breached its duty of care by exposing Charles to asbestos at the McComb shops. Jackson lacks even a mere scintilla of evidence of exposure, and there is a complete absence of probative facts supporting her claim. *See Brent*, 133 So. 3d at 768. Therefore, we reverse the trial court's order denying summary judgment and we render judgment in favor of Illinois Central.

¶22. Illinois Central also argues that the trial court should have struck Ellenbecker's testimony as a discovery sanction for Jackson's failure to submit a complete response to Illinois Central's discovery requests and because its supplementation of Ellenbecker's designation was untimely. Because we have found that the Ellenbecker designation and supplemental response both were improper summary-judgment evidence, and because we reverse the denial of summary judgment, we do not address this issue.

## CONCLUSION

¶23. Because the opinions in the Ellenbecker designation constituted inadmissible hearsay, the trial court erred by failing to strike the designation from the summary-judgment evidence. The supplemental response also was improper summary-judgment evidence because it constituted inadmissible hearsay, and it was not filed in the record. Due to the absence of evidence creating a genuine issue of material fact on the elements of Jackson's FELA claim, we reverse the denial of summary judgment and render judgment in favor of Illinois Central.

¶24. **REVERSED AND RENDERED.**

**WALLER, C.J., LAMAR, KITCHENS, PIERCE, KING AND COLEMAN, JJ., CONCUR. RANDOLPH, P.J., NOT PARTICIPATING.**

13