IN THE SUPREME COURT OF MISSISSIPPI

NO. 2010-CT-01470-SCT

*CHARLIE HONEYCUTT*

*v.*

*TOMMY COLEMAN, ATLANTA CASUALTY
COMPANIES, ATLANTA CASUALTY COMPANY
AND AMERICAN PREMIER INSURANCE
COMPANY*

## ON WRIT OF CERTIORARI

DATE OF JUDGMENT:           08/27/2010
TRIAL JUDGE:                HON. JAMES T. KITCHENS, JR.
COURT FROM WHICH APPEALED:  LOWNDES COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:     JOSEPH E. ROBERTS, JR.
ATTORNEYS FOR APPELLEES:    JOHN W. CROWELL
                            THOMAS Y. PAGE
NATURE OF THE CASE:         CIVIL - INSURANCE
DISPOSITION:                REVERSED AND REMANDED - 05/30/2013
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**KING, JUSTICE, FOR THE COURT:**

¶1.     Charles Honeycutt (Charles) was injured in an automobile accident involving a

Mississippi state trooper. He sued the state trooper and two automobile-insurance providers

– Atlanta Casualty Company (Atlanta Casualty) and American Premier Insurance Company

(American Premier). The trial court granted the defendants' motions for summary judgment.

On appeal, the Court of Appeals affirmed the trial court's grant of summary judgment.

¶2.    Charles filed a writ of certiorari, protesting the grant of summary judgment for American Premier and its affirmance, and we granted his petition. Charles raises two issues:

> I. Whether the trial court and the Court of Appeals erred by finding an insurance agent does not have a duty to explain uninsured-motorist coverage.

> II. Whether summary judgment was granted improperly.

We find that, in order to obtain a knowing and voluntary waiver of uninsured-motorist coverage (UM coverage), an insurance agent does have a duty to explain UM coverage to the insured. We also find that summary judgment was not proper in this case. Thus, we reverse the Court of Appeals' judgment and reverse the Lowndes County Circuit Court's judgment, remanding the case to the trial court.

## FACTS AND PROCEDURAL HISTORY

¶3.    On May 15, 1994, Charles, a minor at the time, was involved in a car accident at the intersection of Highway 45 and Waverly Road in Columbus, Mississippi. Charles was a passenger in Matthew Blaxton's vehicle. At a flashing yellow light, Blaxton made a left-hand turn, and his vehicle collided with Mississippi State Trooper Tommy Coleman's patrol car. Charles was injured as a result of the collision.

¶4.    On April 16, 2001, Charles filed a lawsuit against Trooper Coleman, Atlanta Casualty, and American Premier. All defendants filed motions for summary judgment. On March 16, 2005, the trial court entered an order granting Trooper Coleman's motion for summary judgment pursuant to the Mississippi Tort Claims Act,[1] finding that Trooper Coleman was

---

[1]Miss. Code Ann. §§ 11-46-1 to -23 (Rev. 2012).

acting within the course and scope of his employment and that Charles's claims were barred by the one-year statute of limitations.[2]

¶5.     The trial court granted Atlanta Casualty's motion for summary judgment on August 27, 2010.   Prior to the accident, Atlanta Casualty had been the Honeycutt family's automobile insurer.[3]   However, Atlanta Casualty argued that, prior to the accident, it had cancelled the Honeycutts' insurance policy for unpaid premiums.  The trial court determined that Atlanta Casualty effectively had canceled the Honeycutts' insurance policy and granted Atlanta Casualty's motion for summary judgment.

¶6.     At the time of the accident, the Honeycutts had an insurance policy provided by American Premier, which was in effect.  In its motion for summary judgment, American Premier argued that the Honeycutts had signed a waiver of UM coverage.[4]  Bernice Sam Honeycutt (Sam), Charles's father, acknowledged signing a waiver of UM coverage but claimed that the waiver was not given knowingly.  Charles argued that the insurance agent had a duty to explain UM coverage to his parents, and the insurance agent had failed to do so.  The trial court determined that the insurance agent did not have a duty to explain UM coverage to the Honeycutts and granted American Premier's motion for summary judgment.

---

[2]*See* Miss. Code Ann. § 11-46-11(3) (Rev. 2012).

[3]The Honeycutts had signed a waiver of UM coverage with Atlanta Casualty.

[4]Confusion existed regarding which parent actually had signed the waiver of UM coverage for the American Premier policy– Barbara Honeycutt, Charles's mother, or Bernice Sam Honeycutt (Sam), Charles's father.

¶7. On September 8, 2010, Charles appealed and challenged the trial court's grant of summary judgment as to all defendants. The Court of Appeals affirmed the trial court's judgment.[5] Charles petitioned this Court for writ of certiorari, which we granted. Charles does not contest the Court of Appeals' holding regarding Trooper Coleman and Atlanta Casualty. Thus, we do not address these issues. Charles challenges only the grant of summary judgment for American Premier.

## ANALYSIS

### I. Insurance Agent's Duty to Explain Uninsured-Motorist Coverage

¶8. In its order granting summary judgment, the trial court stated that "the Mississippi Supreme Court overruled its prior ruling that insurance agents are required to explain to the insured the ramifications of rejecting UM coverage." Affirming, the Court of Appeals determined that knowledge of the contents of the contract was imputed to the Honeycutts, and the insurance agent did not have a duty to explain every provision of the contract. *Honeycutt v. Coleman*, __ So. 3d __, 2012 WL 2304222, at **3-5 (¶¶10-19) (Miss. Ct. App. June 19, 2012).

¶9. Charles argues that the trial court and the Court of Appeals misinterpreted caselaw regarding an insurance agent's duty to explain UM coverage to an insured. We agree. Two cases are at issue: *Aetna Casualty and Surety Company v. Berry*, 669 So. 2d 56 (Miss. 1996) (*Berry*), and *Owens v. Mississippi Farm Bureau Casualty Insurance Company*, 910 So. 2d

---

[5]*Honeycutt v. Coleman*, __So. 3d __, 2012 WL 2304222 (Miss. Ct. App. June 19, 2012).

4

1065 (Miss. 2005).

¶10. Mississippi law gives an insured the right to purchase UM coverage. Miss. Code Ann. § 83-11-101 (Rev. 2011). If the insured chooses to reject UM coverage, the statute requires that the insured reject UM coverage in writing. *Id*. Under Mississippi caselaw, a written waiver is not effective unless it can be demonstrated that the insurer sufficiently explained UM coverage to the insured and obtained a knowing and informed waiver of UM coverage. *See Atlanta Cas. Co. v. Payne*, 603 So. 2d 343, 348 (Miss. 1992).

¶11. In *Berry*, the Court held that an insurance agent has a duty to explain a waiver of UM coverage and to explain the option to purchase additional UM coverage. *Berry*, 669 So. 2d at 76-77. The Court stated that:

> We hold that in order for an insured to have an option to increase UM limits not to exceed the limits of the policy, or for the insured to completely reject UM coverage in writing, an insurance agent has a duty to explain UM coverage as outlined above. An agent is not necessarily under a duty to recommend that the insured exercise the option of obtaining UM coverage up to the limits of the policy; however, before an insured may make an intelligent decision about how much UM coverage he wants, or make a knowing waiver of UM coverage in writing (which the agent must obtain if there is to be no UM coverage under the policy), he must understand what he is entitled to.

*Id*. *Berry* addressed two separate issues: (1) a waiver of UM coverage and (2) purchasing additional UM coverage above the statutory minimum. *Berry* required the insurance agent to explain the waiver of UM coverage and, if the insured chose to waive UM coverage, to obtain a written waiver. *Id*. If the insured chose to obtain UM coverage, *Berry* required the insurance agent to inform the insured that he or she had the option to purchase additional UM coverage, not to exceed the policy's limits. *Id*.

5

¶12. In 2005, the Court partially overruled *Berry*. *See Owens*, 910 So. 2d at 1073-75 (¶¶31-40). *Owens* dealt with whether an insurance agent has a duty to explain an insured's right to purchase additional UM coverage over the statutory minimum. *See id*. at 1068 (¶8). The Court affirmed that waiver of UM coverage could be obtained only by a knowing and intelligent waiver. *Id*. at 1074 (¶34). But the Court determined that an insurance agent did not have a duty to explain **additional** UM coverage above the statutory minimum, overruling *Berry* on this point. *Id*. at 1074 (¶35). The Court stated that:

> The agent's requirement announced in *Berry* is in two parts. The first requires explanation of UM coverage prior to obtaining the waiver required by Miss. Code Ann. § 83-11-101. The second requires explanation of an insured's right to increase UM benefits from the statutory limit to the liability limit of the policy.
>
> Although we question the seemingly absolute requirement of explanation by the insurance agent, **we fully agree and hold that the statutorily required waiver of UM coverage may be obtained only from a fully-informed insured. That is to say, the waiver must be knowing and intelligent.** This distinction is important since there may be instances where the insured – separate and apart from any explanation by the agent – is already fully aware of the intricacies of UM coverage, including the costs and benefits, and being fully informed, chooses to waive UM coverage. Under such circumstances, no logical reason exists to require a redundant explanation from the agent. The simple principle announced here is that no statutorily-required waiver of UM benefits is effective unless the waiver was obtained from an insured who was reasonably knowledgeable and informed of the costs and benefits of such UM coverage prior to signing the waiver. To this extent, we reaffirm the holding in *Berry*.
>
> **However, we reject and overrule the implication in *Berry* that an insurance agent has the absolute, court-created duty to explain an insured's right to purchase additional UM coverage, over and above the amount of coverage required by statute.**

*Owens*, 910 So. 2d at 1074 (¶¶33-35) (emphasis added).

6

¶13.    In subsequent cases, the Court noted its partial overruling of ***Berry***.  *See **Alley v. N. Ins. Co***, 926 So. 2d 906, 909 (¶6) (Miss. 2006).  And previously, the Court of Appeals correctly had explained the effect of ***Owens*** on the ***Berry*** holding, stating that:

> However, Mississippi law does not require an insurance agent to explain the costs, risks, and benefits of carrying UM coverage over the statutory minimum. In ***Owens***, the Mississippi Supreme Court distinguished two separate issues that [the appellant's] brief conflates.  First, when an insured waives UM coverage altogether, there is a question as to whether that waiver was knowing and intelligent.  In answering that question, the court will often look to whether the agent explained UM coverage to the insured.  Second and distinct is the question as to whether an agent has a legal duty to explain the costs, risks, and benefits of carrying UM coverage over the statutory minimum. On that second question, the supreme court clearly answered in the negative.

***Reid v. Miss. Farm Bureau Cas. Ins. Co.***, 63 So. 3d 1238, 1240 (¶9) (Miss. Ct. App. 2010).

Based on the above, we find that the trial court and the Court of Appeals incorrectly interpreted the Court's holding in ***Owens***.

¶14.    As previously mentioned, the question in ***Owens*** was whether an insurance agent has a duty to explain an insured's right to purchase **additional UM coverage** above the statutory minimum.  The Court determined that no such duty existed, partially overruling ***Berry***. ***Owens***, 910 So. 2d at 1074 (¶35).  The ***Owens*** Court questioned whether an insurance agent absolutely was required to explain **a waiver of UM coverage** if the insured was "already fully aware of the intricacies of UM coverage, including the costs and benefits . . . ." ***Id***. at 1074 (¶34). Because ***Owens*** did not concern a waiver of UM coverage, the question was not

before the Court, and the language is dicta.[6] ***Owens*** did not take the extra step to overrule

***Berry's*** holding on this matter. Thus, we deem it appropriate to clarify the application of

***Berry***.

¶15.   First, any waiver of UM coverage must be made knowingly and intelligently, and the waiver must be in writing. Second, the insurance carrier bears the burden of proving that any waiver of UM coverage was made knowingly and intelligently. Third, the insurance carrier may meet that burden of proof by establishing that it provided an explanation, appropriate to the client, of UM coverage. The insurance carrier also may establish that the client was fully knowledgable through other sources of the purposes and benefits of UM coverage. Fourth, any document signed by the client which allegedly states that an explanation was given to the client may be considered by the fact finder, but this is not dispositive as to whether the client gave a knowing and intelligent waiver of UM coverage. Fifth, the client may rebut, through appropriate evidence, any proof offered by the carrier. And sixth, whether a client made a knowing and intelligent waiver of UM coverage ultimately is a question of fact to be resolved by the trier of fact.

---

[6]The Court stated that:

> In the case before us today, there is no issue of knowing, intelligent waiver, since Mr. Owens did not waive the statutory minimum UM coverage. Rather, Mrs. Owens claims that her husband's Farm Bureau agent, Smith, did not explain the right to purchase UM coverage equal to the bodily injury liability limits under their policy.

***Owens***, 910 So. 2d at 1075 (¶36).

## II. Summary Judgment

¶16. Next, Charles argues that the trial court erred by granting summary judgment in favor of American Premier, and the Court of Appeals erred by making factual findings to affirm the trial court's holding.

¶17. We review the trial court's grant or denial of summary judgment de novo. *Poppenheimer v. Estate of Coyle*, 98 So. 3d 1059, 1062 (¶7) (Miss. 2012). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). The moving party has the burden to show that no genuine issue of material fact exists. *Poppenheimer*, 98 So. 3d at 1062 (¶8). Accordingly, we review the evidence in the light most favorable to the nonmoving party. *Id*.

¶18. Although the Honeycutts had signed a waiver of UM coverage, Sam and Barbara testified that they had not understood the importance of such rejection, and the insurance agent had failed to explain the waiver. In fact, Sam indicated that he had asked for "full coverage," and he had "assumed full coverage covered everything." Based on this testimony, Charles maintains that a genuine issue of material fact exists regarding whether his parents gave a knowing and intelligent waiver of UM coverage. American Premier argues that the provision signed by the Honeycutts was sufficient to show that it had obtained a knowing and intelligent waiver of UM coverage.

¶19. The provision signed by the Honeycutts reads as follows:

9

State law requires that no automobile liability insurance policy be issued or delivered unless it contains an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages for bodily injury, death or property damage from the owner or operator of an uninsured motor vehicle and permits any insured named in the policy to select or reject uninsured motorist coverage for this policy and any renewal hereof.

I acknowledge and agree that I have been given the option to purchase uninsured motorist coverage within limits no less than those set forth in the Mississippi Motor Vehicle Safety Responsibility Law and up to an amount not to exceed that provided in the policy of bodily injury liability insurance or to reject the coverage entirely. After having uninsured motorist coverage offered and explained, I have voluntarily and intentionally exercised this option as indicated below and as shown on the other side of this application.

A checkmark is beside the statement "I reject uninsured motorist coverage in its entirety,"[7] and the provision is signed and dated.

¶20.    American Premier argues that this provision is sufficient proof that the Honeycutts made a knowing and intelligent waiver of UM coverage. According to American Premier, the Honeycutts were responsible for reading the provision prior to signing it and, by signing the provision, they are charged with knowledge of its contents. The Court of Appeals came to this same conclusion when affirming the trial court's judgment.

¶21.    While the waiver of UM coverage signed by the Honeycutts can be considered in determining whether they made a knowing and intelligent waiver of UM coverage, we find that the document is not outcome-determinative. The Honeycutts testified that, although Sam signed the provision, they did not read the provision and (notwithstanding the assertion of

---

[7]In his deposition, Sam testified that he did not place the check mark on the provision. According to Sam, the insurance agent would fill out the forms beforehand, and he would sign the documents.

an explanation contained in that provision) the insurance agent failed to explain the waiver of UM coverage. Barbara testified that "they just tell you you don't have to bother reading it, just initial it or sign it." ***Owens*** makes clear that the insured must be "reasonably knowledgeable and informed of the costs and benefits of such UM coverage prior to signing the waiver." ***Owens***, 910 So. 2d at 1074 (¶34). The waiver provision itself neither explains the benefits of UM coverage nor the consequences of rejecting UM coverage. American Premier argues that the Honeycutts had a history of rejecting UM coverage, and this is sufficient proof that they gave a knowing waiver. It certainly is plausible that the Honeycutts were aware of the intricacies of UM coverage, but this determination should be made by the fact-finder.

¶22. Viewing the evidence in the light most favorable to Charles, we find a genuine issue of material fact exists regarding whether the insurance agent explained the costs and benefits and whether the Honeycutts gave a knowing and intelligent waiver of UM coverage. Because the evidence presents a genuine issue of material fact that should be decided by the fact-finder, the trial court erred by granting American Premier's motion for summary judgement.

**CONCLUSION**

¶23. Insurance agents must obtain a knowing and intelligent waiver of UM coverage and obtain that waiver in writing. A provision signed by the insured, which purportedly waives UM coverage, may be considered as evidence of whether the insured gave a knowing and intelligent waiver. However, the existence of the document is not outcome-determinative.

11

The Honeycutts presented a genuine issue of material fact regarding whether they gave a knowing and intelligent waiver of UM coverage. Thus, the trial court erred by granting summary judgment. In regard to the American Premier insurance policy, we reverse the judgment of the Court of Appeals, and we reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.

¶24.  **REVERSED AND REMANDED.**

**WALLER, C.J., DICKINSON, P.J., KITCHENS AND CHANDLER, JJ., CONCUR. RANDOLPH, P.J., LAMAR, PIERCE AND COLEMAN, JJ., CONCUR IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION.**