# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-IA-00126-SCT

*THE SERVICE COMPANIES, INC. d/b/a FSS*

*v.*

*THE ESTATE OF MAUTRICE VAUGHN, INDIVIDUALLY, AND LINDA VAUGHN, ON BEHALF OF ALL WRONGFUL DEATH BENEFICIARIES OF MAUTRICE VAUGHN, DECEASED*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/08/2014 |
| TRIAL JUDGE: | HON. JOHNNIE E. WALLS, JR. |
| TRIAL COURT ATTORNEYS: | JOSEPH HARLAND WEBSTER |
| | CHRISTOPHER MICHAEL WYATT |
| COURT FROM WHICH APPEALED: | TUNICA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CHRISTOPHER MICHAEL WYATT |
| ATTORNEY FOR APPELLEES: | JOSEPH HARLAND WEBSTER |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | REVERSED AND RENDERED - 07/23/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., LAMAR AND PIERCE, JJ.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1.     This interlocutory appeal arose from a law suit by Mautrice Vaughn's estate and wrongful-death beneficiaries against The Service Companies Inc., ("FSS"), following Vaughn's fatal heart attack at work. Vaughn's estate and wrongful-death beneficiaries ("the plaintiffs") brought suit for false imprisonment and intentional infliction of emotional distress. The plaintiffs alleged Vaughn's supervisor would not let her leave work to see a doctor despite complaints of severe chest pain and a headache. Following the denial of its

Motion for Summary Judgment, we granted FSS leave to bring this interlocutory appeal to this Court seeking reversal. FSS asserts the circuit court erred by finding a factual dispute existed as to whether FSS had "an actual intent to injure" for purposes of determining whether the Mississippi Workers' Compensation Act exclusively governs the plaintiffs' claims.

**FACTS AND PROCEDURAL HISTORY**

¶2. Vaughn was employed by Service Companies, Inc., doing business as FSS, to perform housekeeping services at the Gold Strike Casino Resort, owned by MGM. Gold Strike contracted with FSS to perform a portion of its housekeeping services, and FSS operated independently from Gold Strike's inhouse cleaning and housekeeping staff. At the time of Vaughn's death, her supervisor was Doreen Gholam, FSS's housekeeping manager.[1]

¶3. The plaintiffs and FSS dispute the events preceding Vaughn's death on May 28, 2010. FSS and Gholam maintain that Vaughn went to Gholam's office around 8:00 a.m. to give Gholam a doctor's note excusing Vaughn's absence from work two days earlier. In Gholam's written statement and depositions she said that Vaughn did not appear to be in discomfort. Gholam said she asked Vaughn whether "everything was O.K." and Vaughn replied that she was "just getting old" and returned to work.

---

[1] Initially the plaintiffs identified Tess Johnson, a Gold Strike employee, as Vaughn's supervisor. Tess Johnson was the Gold Strike housecleaning supervisor and did not manage or interact with Vaughn. Counsel for the plaintiffs said at a hearing on FSS and Gold Strike's summary judgment motion, "We concede that after we did conduct discovery that Gold Strike didn't really have any place in this lawsuit anymore. Initially, we thought that a Gold Strike employee had committed the acts that we complained of against the FSS employee. It turns out, based on discovery, our allegations and facts that we gathered; we contend that an FSS employee committed the acts against a fellow FSS employee."

2

¶4. The plaintiffs assert that Vaughn called her sister, Michelle, around 11:00 a.m, and that their other sister, Brenda answered. Brenda stated that Vaughn said she had complained about severe chest pains to Gholam around 7:30 a.m., but that Gholam would not let her leave. FSS maintained a point system to track when employees were tardy, left early, or were absent from a shift. According to Brenda, Vaughn said that leaving work early on a fully-booked holiday weekend would cause Vaughn to incur "double points" under the point system. Brenda stated that Vaughn believed she would lose her job if she left. In her deposition, Brenda said Vaughn asked to be picked up from work. Brenda and Michelle left to pick up Vaughn, and, along the way, they stopped to get Vaughn's aunt, Linda. Around 11:35 a.m., after picking Linda up, and still en route to Vaughn, the sisters were called by Vaughn's coworker and were told that, Vaughn was unconscious and was not breathing.

¶5. FSS maintains that after Vaughn was found unconscious by a maintenance worker, an ambulance was called and Gholam returned to her office to call the doctor listed on Vaughn's doctor's note. Gholam said she spoke with the doctor, who informed her that Vaughn was having frequent headaches and had high blood pressure.

¶6. Vaughn's sisters and aunt were informed that Vaughn was transported to a nearby hospital. By the time Vaughn's family reached the hospital, Vaughn had died. The fact that Vaughn died at the hospital from a heart attack suffered at work is uncontested.

¶7. On April 15, 2011, the plaintiffs filed suit in Tunica County Circuit Court against FSS and Gold Strike for false imprisonment and intentional infliction of emotional distress. The suit alleged Vaughn was "intentionally, willfully or wantonly prevented from leaving work

3

to seek medical care by employees of Gold Strike and/or FSS, and as a result, suffered injuries and ultimately died." The plaintiffs further alleged "Casino and FSS intentionally acted to impose a confinement upon Mautrice Vaughn against her will" and that "as a direct and proximate result of these Defendants' actions, Plaintiff and Plaintiff's decedent were caused to suffer medical expenses, conscious pain and suffering and resulting mental and emotional distress, loss of wages, and wage earning capacity, as well as loss of financial support, loss of love, society and companionship, funeral expenses, and all other expenses allowed by the Mississippi Wrongful Death Statute, § 11-7-13."

¶8. On July 11, 2011, FSS moved for dismissal under Mississippi Rule of Civil Procedure 12(b)(6). In its motion, FSS argued the plaintiffs could not recover for an injury sustained at work under the Mississippi Wrongful Death Statute, as the Mississippi Workers' Compensation Act (MWCA) provided the exclusive remedy against an employer.[2] The plaintiffs opposed the motion, arguing their claims were excepted from the MWCA as intentional torts. The MWCA, they argued, exclusively governed only common-law claims for negligence. Without explanation, the circuit court entered an order denying FSS's Motion to Dismiss.

¶9. On September 25, 2013, FSS and Gold Strike moved for summary judgment, asserting that without an "actual intent to injure" Vaughn, the plaintiffs could not proceed on a claim

---

[2] Miss. Code Ann. §§ 71-3-1 to 71-3-25 (Rev. 2011). *See* Miss. Code. Ann. § 71-3-9 (Rev. 2011) ("The liability of an employer to pay compensation shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next-of-kin, and anyone otherwise entitled to recover damages at common law from such employer on account of such injury or death . . . .")

outside of the MWCA. Further, the defendants argued, the "found dead" presumption of Section 71-3-3(b) of the MWCA established the MWCA's exclusivity over the claims.[3]

¶10. On December 17, 2013, the circuit court conducted a hearing on the motion. The claims against Gold Strike were withdrawn by the plaintiffs. FSS, in its defense, argued that the plaintiffs did not submit any evidence of actual intent to injure Vaughn, as an essential element to the false-imprisonment claim and its corresponding claim of intentional infliction of emotional distress. In response, counsel for the plaintiffs asserted a factual issue existed as to whether Vaughn's supervisor intended to detain her. The plaintiffs claimed that the conflicting deposition testimonies of Gholam and Vaughn's family members created a genuine factual dispute about whether Vaughn asked to leave to seek medical attention and whether Gholam threatened Vaughn with termination.

¶11. On January 16, 2014, the circuit court entered an order granting summary judgment with prejudice to Gold Strike and denying summary judgment to FSS. Pursuant to M.R.A.P. 5, this Court granted FSS leave to bring this appeal to this Court to raise the following two issues on interlocutory appeal: (1) whether the undisputed facts demonstrate that FSS did not have an "actual intent to injure" Vaughn, thereby subjecting her claims exclusively to the Mississippi Workers' Compensation Act; and (2) whether the statutory presumption in Section 71-3-3(b) establishes Vaughn's exclusive remedy under the Mississippi Workers' Compensation Act because Vaughn was "found dead" at her place of employment. Because

---

[3]In pertinent part, the Section provides, "An untoward event or events shall not be presumed to have arisen out of and in the course of employment, except in the case of an employee found dead in the course of employment." Miss. Code Ann. § 71-3-3(b) (Rev. 2011).

5

the plaintiffs failed to submit evidence of actual intent, as an essential element of the false-imprisonment claim, we find the plaintiffs' claims are insufficient to survive summary judgment under any statutory scheme and we do not reach the exclusivity issues raised by FSS. Finding the plaintiffs' claims cannot survive summary judgment, we reverse and render the order denying summary judgment to FSS.

## STANDARD OF REVIEW

¶12.    This Court reviews the grant or denial of a motion for summary judgment de novo. *Copiah Cnty. v. Oliver*, 51 So. 3d 205, 207 (¶ 7) (Miss. 2011). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Palmer v. Anderson Infirmary Benevolent Ass'n*, 656 So. 2d 790, 794 (Miss. 1995) (citation omitted) (quoting M.R.C.P. 56(c)). Because the proponent of summary judgment has the burden of showing that no genuine issue of material fact exists, this Court must review the evidence in the light most favorable to the nonmoving party. *Honeycutt v. Coleman*, 120 So. 3d 358, 363 (Miss. 2013). The credibility of evidence likewise must be viewed in the light most favorable to the nonmoving party. *Treasure Bay Corp. v. Ricard*, 967 So. 2d 1235, 1240 (Miss. 2007).

¶13.    Here, the plaintiffs seek recovery for alleged false imprisonment and intentional infliction of emotional distress (as a result of the imprisonment). Both claims require willful, and not merely negligent, acts by the tortfeasor. A plaintiff must prove two elements in order to succeed on a false-imprisonment claim: "(1) the detention of the plaintiff; and (2) the

6

unlawfulness of such detention." ***Alpha Gulf Coast, Inc. v. Jackson***, 801 So. 2d 709, 720 (¶ 28) (Miss. 2001) (citing ***Wallace v. Thornton***, 672 So. 2d 724, 727 (Miss. 1996); ***Thornhill v. Wilson***, 504 So. 2d 1205, 1208 (Miss. 1987)). This Court has explained that the second element is determined by looking at "whether, 'looking at the totality of the circumstances, the actions of the Defendant were objectively reasonable in their nature, purpose, extent and duration.'" ***Id***. (quoting ***Wallace***, 672 So. 2d at 727).

¶14.     Here, the plaintiffs fail to satisfy the first element of false imprisonment.  Plaintiffs fail to submit evidence of willful detention by a tortfeasor.  If the plaintiffs' allegations and depositions (regarding Vaughn's hearsay testimony) are taken as true,  then Vaughn's supervisor told her she could not leave work without accumulating "double points" under the employee point system.  None of the parties has alleged Gholam or FSS would have fired Vaughn, and the plaintiffs' counsel has not sufficiently evidenced, through case law or otherwise, that such an action would amount to willful detention in any event. *See **Martin v. Santora***, 199 So. 2d 63, 65 (Miss 1967) ("The circumstances merely that one considers himself restrained in his person is not sufficient to constitute false imprisonment unless it is shown that there was a reasonable ground to have believed defendant would resort to force if plaintiff attempted to assert her right to freedom.")

¶15.     The plaintiffs proceed solely on a theory of willful detention and consequent infliction of emotional distress, but have not alleged the requisite intent to survive summary judgment.

**CONCLUSION**

¶16. We find the plaintiffs' common-law false-imprisonment claim is insufficient to survive summary judgment because the plaintiffs did not produce evidence of intent to detain. The plaintiffs may not merely rest on the pleadings and allegations alone. Thus, we find summary judgment in favor of FSS proper, and we reverse the trial court's ruling denying summary judgment, and we render judgment in favor of FSS finally dismissing the plaintiffs' complaint and this action with prejudice and with plaintiffs to bear court costs.

¶17. **REVERSED AND RENDERED.**

**WALLER, C.J., RANDOLPH, P.J., KITCHENS, CHANDLER, KING AND COLEMAN, JJ., CONCUR. DICKINSON, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. LAMAR, J., CONCURS IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION.**